IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
WAYCROSS DIVISION

| | |
|---|---|
| DAVID LUKE, <br><br> Plaintiff, <br><br> v. <br><br> MARTIN O'MALLEY, Commissioner of Social Security, <br><br> Defendant. | CIVIL ACTION NO.: 5:22-cv-51 |

**O R D E R**

Plaintiff contests the decision of Administrative Law Judge Clara H. Aranda ("the ALJ" or "ALJ Aranda") denying his claim for disability benefits. Plaintiff urges the Court to remand for reconsideration of the ALJ's decision. Doc. 17. Defendant asserts the Commissioner's decision should be affirmed. Doc. 20. For the following reasons, I **AFFIRM** the ALJ's decision.[1] I also **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

BACKGROUND

Plaintiff filed an application for Disability Insurance Benefits on August 19, 2019, alleging an initial onset date of July 15, 2019.[2] R. 16.[3] The claims were initially denied on

---

[1]   Plaintiff consented to the undersigned's plenary review. Docs. 10, 11.

[2]   Plaintiff amended his alleged onset date to October 12, 2019. R. 433–34.

[3]   A transcript of the entire proceedings before the Social Security Administration appears at Document Numbers 16-1 through 16-14. Although the transcript is broken into multiple PDF documents, each with its own CM/ECF docketing number, the transcript bears individual page numbers that run sequentially through the entire transcript. Record citations in this Report (identified with "R.") are to the

November 20, 2019, and again upon reconsideration on July 21, 2020.  Id.  Plaintiff filed a written request for a hearing on August 5, 2020.  Id.  On December 15, 2021, ALJ Aranda held an online video hearing, at which Plaintiff, who was represented by counsel, attended by online video and testified.  Id.  Emily Colson Green, a vocational expert, also appeared at the hearing.  Id.  ALJ Aranda denied Plaintiff's claim for disability after the hearing in a decision issued on January 25, 2022.  R. 32.  The Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner.  R. 1.

Plaintiff, born on November 18, 1981, was 37 years old at the time of the alleged onset date and 40 years old at the time of the ALJ's decision in 2022.  R. 30.  He has a high school education and previously worked as an assembler, delivery truck driver, collection clerk, security guard, corrections officer, and jailor.  R. 29–30.

## DISCUSSION

### I.  The ALJ's Findings

Title II of the Act defines "disability" as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months."  42 U.S.C. § 423(d)(1)(A).  The Act qualifies the definition of disability as follows:

> An individual shall be determined to be under a disability only if his physical or mental impairment or impairments are of such severity that he is not only unable to do his previous work but cannot, considering his age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy[.]

---

individual transcript page numbers.  For efficiency, no reference to the CM/ECF docketing number or the respective PDF page numbers is provided here.

42 U.S.C. § 423(d)(2)(A). Pursuant to the Act, the Commissioner has established a five-step process to determine whether a person meets the definition of disability. 20 C.F.R. §§ 404.1520, 416.920; Bowen v. Yuckert, 482 U.S. 137, 140 (1987).

The first step determines if the claimant is engaged in "substantial gainful activity." Id. If the claimant is engaged in substantial gainful activity, then benefits are immediately denied. Id. If the claimant is not engaged in such activity, then the second inquiry is whether the claimant has a medically severe impairment or combination of impairments. Id. at 140–41. If the claimant's impairment or combination of impairments is severe, then the evaluation proceeds to step three. The third step requires a determination of whether the claimant's impairment meets or equals one of the impairments listed in the Code of Federal Regulations and acknowledged by the Commissioner as sufficiently severe to preclude substantial gainful activity. 20 C.F.R. §§ 404.1520(d), 416.920(d); 20 C.F.R. Pt. 404, Subpt. P. App. 1; Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004), superseded on other grounds by 20 C.F.R. § 404.1520c. If the impairment meets or equals one of the listed impairments, the plaintiff is presumed disabled. Yuckert, 482 U.S. at 141.

If the impairment does not meet or equal one of the listed impairments, the sequential evaluation proceeds to the fourth step to determine if the impairment precludes the claimant from performing past relevant work, i.e., whether the claimant has the residual functional capacity to perform her past relevant work. Id.; Stone v. Comm'r of Soc. Sec., 503 F. App'x 692, 693 (11th Cir. 2013). A claimant's residual functional capacity "is an assessment . . . of the claimant's remaining ability to do work despite his impairments." Id. at 693–94 (ellipsis in original) (quoting Lewis v. Callahan, 125 F.3d 1436, 1440 (11th Cir. 1997)). If the claimant is unable to perform his past relevant work, the final step of the evaluation process determines whether he is

3

able to make adjustments to other work in the national economy, considering his age, education, and work experience.  Phillips, 357 F.3d at 1239.  Disability benefits will be awarded only if the claimant is unable to perform other work.  Yuckert, 482 U.S. at 142.

Here, the ALJ followed this sequential process to determine Plaintiff met the insured status requirements of the Social Security Act to remain insured through December 31, 2023, and had not engaged in substantial gainful activity since his alleged onset date, July 15, 2019, through his date last insured.  R. 18.  At step two, ALJ Aranda determined Plaintiff had the following severe impairments: major depressive disorder; generalized anxiety disorder; somatic disorder; post-traumatic stress disorder ("PTSD"); sedative hypnotic or anxiolytic dependence; degenerative disc disease; and obesity.  Id.  The ALJ also found Plaintiff had one non-severe impairment: hypertension.  R. 19.  At the third step, the ALJ determined Plaintiff's impairments or combination of impairments did not meet or medically equal the severity of a listed impairment.  Id.

ALJ Aranda found Plaintiff had the residual functional capacity ("RFC") to perform light work, except Plaintiff could not climb ropes or scaffolds.  R. 21.  The ALJ found Plaintiff could occasionally climb ladders, ramps, and stairs.  Id.  The ALJ found Plaintiff could frequently balance.  Id.  The ALJ found Plaintiff could occasionally stoop, kneel, crouch, and crawl but must avoid concentrated exposure vibrations and hazards.  Id.  The ALJ found Plaintiff could understand and remember simple instructions; perform simple, routine, and repetitive tasks and make simple, work-related decisions.  Id.  The ALJ found Plaintiff was able to interact frequently with supervisors, coworkers, and the general public and adapt to simple, gradual changes in the workplace.  Id.

At the next step, the ALJ determined Plaintiff could not perform his past relevant work. R. 29. The ALJ concluded at the fifth and final step Plaintiff could perform jobs, such as merchandise marker, cleaner, and photocopy machine operator, all of which exist in significant numbers in the national economy. R. 31.

**II.     Issues Presented**

Plaintiff asserts three enumerations of error: (1) the ALJ failed to incorporate the use of a cane when assessing Plaintiff's RFC; (2) the ALJ's RFC does not account for limitations from a persuasive medical opinion; and (3) the ALJ was not properly appointed so she lacked the authority to hear and decide Plaintiff's claim. Doc. 17 at 5, 25.

**III.    Standard of Review**

It is well established judicial review of social security cases is limited to questions of whether the Commissioner's factual findings are supported by "substantial evidence" and whether the Commissioner has applied appropriate legal standards. Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991); Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990). A reviewing court does not "decide facts anew, reweigh the evidence or substitute" its judgment for that of the Commissioner. Dyer v. Barnhart, 395 F.3d 1206, 1210 (11th Cir. 2005). Even if the evidence preponderates against the Commissioner's factual findings, the court must affirm a decision supported by substantial evidence. Id.

However, substantial evidence must do more than create a suspicion of the existence of the fact to be proved. The evidence relied upon must be relevant evidence that a reasonable mind would find adequate to support a conclusion. Ingram v. Comm'r of Soc. Sec. Admin., 496 F.3d 1253, 1260 (11th Cir. 2007). The substantial evidence standard requires more than a scintilla but less than a preponderance of evidence. Dyer, 395 F.3d at 1210. In its review, the

court must also determine whether the ALJ or Commissioner applied appropriate legal standards. Failure to delineate and apply the appropriate standards mandates the findings be vacated and remanded for clarification. Cornelius, 936 F.2d at 1146.

The deference accorded the Commissioner's findings of fact does not extend to her conclusions of law, which enjoy no presumption of validity. Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard). If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the court must reverse the decision. Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982), overruling by statute on other grounds recognized by Lane v. Astrue, No. 8:11-CV-345, 2012 WL 292637, at *4 (M.D. Fla. Jan. 12, 2012).

### IV.    The ALJ Properly Considered Plaintiff's Cane Prescription

Plaintiff argues the ALJ failed to properly incorporate the use of a cane when assessing Plaintiff's RFC. Doc. 17 at 13–18. Plaintiff contends the ALJ improperly rejected the medical necessity of Plaintiff's cane under Social Security Ruling ("SSR") 96-9p. Id. at 14–15. Plaintiff contends the ALJ "played doctor" by improperly interpreting raw medical data. Id. at 15–16. Plaintiff contends the ALJ implicitly directed Plaintiff not to follow prescribed medical treatment. Id. at 16–17. The Commissioner responds the ALJ's determination that Plaintiff's cane was not medically necessary is supported by substantial evidence. Doc. 20 at 7–9.

Dr. Earl T. Martin prescribed Plaintiff a cane on November 11, 2020. R. 1496 (cane prescription). The record shows Dr. Martin was Plaintiff's primary care provider at the time. R. 1568–77 (progress notes dated Sept. 2, 2020 to Dec. 9, 2020). Dr. Martin examined Plaintiff on November 11, 2020, and determined Plaintiff had "other intervertebral disc degeneration, lumbosacral region," and low back pain, among other issues. R. 1572. Dr. Martin concluded

Plaintiff should start taking acetaminophen-hydrocodone tablets and using a cane. Id. Dr. Martin also noted Plaintiff had "some bulging discs on imaging and a positive straight leg raising test." Id. Dr. Martin ordered a follow up in four weeks.

The ALJ found the record did not support the medical necessity for Plaintiff's use of a cane. R. 23, 29. ALJ Aranda stated, "[T]here is no mention of gait dysfunction as the reason for prescribing the cane. Moreover, the use of a cane is not supported as physical exam findings show he had a normal gait and mostly normal range of motion." R. 23. ALJ Aranda stated Plaintiff's cane prescription "is not an opinion, but rather a prescription for a cane due to 'low back pain[.]'" R. 29. The ALJ explained, "[T]he records do not show any diagnosis for altered gait or dysfunction of gait. Physical exam findings only showed some decreased range of motion due to pain, but there is no evidence of neurological deficits." Id. The ALJ also described Plaintiff's CT scans:

> The CT scan of the lumbar spine dated July 2019 showed some disc bulges, but no evidence of spinal stenosis or spondylolisthesis. A CT scan dated May 2021 showed mild progression of L4-5 disc degeneration, central protrusion, and slight retrolisthesis. At L3-4, there was a disc bulge and canal stenosis. There was degenerative foraminal stenosis most significant at L4-5 and L5-S1 without gross interval change. There was a nonobstructing left upper pole renal calculi.

Id. (internal citations to the record omitted). The ALJ did not cite any physical exam findings, though she cited Plaintiff's CT scans. The ALJ concluded "the prescription for a cane is not persuasive." Id.

### A.     SSR 96-9p Does Not Apply

Plaintiff argues the ALJ improperly rejected Plaintiff's cane prescription under SSR 96-9p. Doc. 17 at 13–15. The Commissioner disagrees, and argues substantial evidence supports the ALJ's determination that Plaintiff's cane was not medically necessary under SSR 96-9p.

7

Doc. 20 at 7–9. The parties' arguments are misplaced. Social Security Ruling 96-9p does not apply in these circumstances.

Social Security Ruling 96-9p "explain[s] the Social Security Administration's policies regarding the impact of [an RFC] assessment for less than a full range of sedentary work on an individual's ability to do other work." SSR 96-9P, 1996 WL 374185, at *1 (S.S.A. July 2, 1996). It provides guidelines for evaluating certain exertional limitations and restrictions, including medically required hand-held assistive devices. Id. at *7. The guidelines provide criteria for determining whether a hand-held assistive device is medically required, the circumstances for which it is needed, and determining whether someone with an assistive device can make an adjustment to unskilled sedentary work. Id. Ruling 96-9p does not discuss the impact of a hand-held assistive device when an individual has an RFC that permits more than sedentary work (i.e., RFCs that permit light, medium, heavy, or very heavy work).

Social Security Ruling 96-9p does not apply here because the ALJ found Plaintiff had the RFC to perform light work, not sedentary work. The SSR 96-9p requirements for showing the circumstances for which a hand-held assistive device is needed make sense in the sedentary-work context. The ALJ must consider particular facts about the use of the device to determine whether the individual can adjust to certain unskilled sedentary occupations. The same reasoning does not apply to an individual who can perform light work. Indeed, a plain reading of SSR 96-9p demonstrates the ruling does not apply to individuals with an RFC that allows light work.

The parties have provided no authority that shows SSR 96-9p applies in these circumstances. Courts considering the issue have determined SSR 96-9p does not apply to cases where the claimant is found to have an RFC to perform more than sedentary work. See

Machicote v. Comm'r of Soc. Sec., No. 6:20-CV-1907, 2022 WL 769997, at *4 (M.D. Fla. Jan. 3, 2022) (collecting cases), report and recommendation adopted, 2022 WL 768017 (M.D. Fla. Mar. 14, 2022).  The reasoning in Machicote is convincing and I adopt it here.  Further, the ALJ did not cite SSR 96-9p in her decision as a basis for rejecting Plaintiff's cane prescription.  I, therefore, conclude SSR 96-9p does not apply here.

### B.   Plaintiff's Cane Prescription Is Not a Medical Opinion

Plaintiff argues the ALJ improperly excluded Plaintiff's use of a cane from the RFC determination because the ALJ used raw medical data to reject Plaintiff's cane prescription.  Doc. 17 at 15–16.  The Commissioner argues substantial evidence supports the ALJ's determination, and the ALJ simply reviewed the relevant evidence to assess Plaintiff's RFC.  Doc. 20 at 7–9.

Plaintiff's argument relies on the assumption that Dr. Martin's cane prescription is a medical opinion.  See Doc. 24 at 4 (arguing the ALJ's assessment of Plaintiff's CT scans "is not a valid reason for the ALJ to reject Dr. Martin's opinion").  Whether the cane prescription constitutes an opinion is significant because the ALJ must consider certain factors when evaluating medical opinions.  20 C.F.R. § 416.920c(b)(2).  For medical opinions, the ALJ must articulate how he considered supportability and consistency of the opinion.  Anthony v. Kijakazi, CV 120-110, 2021 WL 4304725, at *3 (S.D. Ga. Sept. 3, 2021) (citing 20 C.F.R. § 416.920c(b)(2), and Uresi v. Comm'r of Soc. Sec., No. 2:20-CV-367, 2021 WL 2644549, at *4 (M.D. Fla. June 28, 2021)).  However, this articulation requirement does not apply to categories of evidence other than medical opinions.

A medical opinion is a statement from a medical source about what the claimant can still do despite his impairments and whether the claimant has one or more enumerated impairment-

related limitations or restrictions. 20 C.F.R. § 416.913(a)(2). These enumerated limitations and restrictions include the claimant's ability to perform physical demands of work activities, such as sitting, standing, or walking, and the claimant's ability to perform other demands of work, such as seeing and hearing. 20 C.F.R. § 416.913(a)(2)(i)(A)–(D).

Other categories of evidence include objective medical evidence and "other medical evidence." "Objective medical evidence is medical signs, laboratory findings, or both . . . ." 20 C.F.R. § 416.913(a)(1). "Other medical evidence is evidence from a medical source that is not objective medical evidence or a medical opinion, including judgments about the nature and severity of [the claimant's] impairments, [the claimant's] medical history, clinical findings, diagnosis, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3).

Plaintiff's cane prescription is not a medical opinion. Dr. Martin did not opine on Plaintiff's specific abilities, impairments, or restrictions, as required for medical opinions under 20 C.F.R. § 416.913(a)(2). Dr. Martin's cane prescription suggests Plaintiff needed a cane, along with acetaminophen-hydrocodone tablets, to treat disc degeneration and low back pain. See R. 1572. However, Dr. Martin did not opine on how a cane affects Plaintiff's ability to perform the physical demands of work activities. The cane prescription and the record of Plaintiff's November 11, 2020 exam fit the description of "other medical evidence," specifically, a "clinical finding, treatment prescribed with response, or prognosis." 20 C.F.R. § 416.913(a)(3). As a result, the ALJ was not required to articulate how she considered the supportability and consistency of the cane prescription.

**C.    Substantial Evidence Supports the ALJ's Exclusion of a Cane From the RFC**

The responsibility for making the RFC determination rests with the ALJ. 20 C.F.R. § 416.946. The RFC is "that which an individual is still able to do despite the limitations caused

by his or her impairments." Rodriguez v. Berryhill, 836 F. App'x 797, 805–06 (11th Cir. 2020) (citing Phillips v. Barnhart, 357 F.3d 1232, 1237 (11th Cir. 2004)). An ALJ's RFC assessment must be supported by substantial evidence, and a reviewing court may not re-weigh the evidence or substitute its own judgment for that of the Commissioner. See Borges v. Comm'r of Soc. Sec., 771 F. App'x 878, 882 (11th Cir. 2019) ("To the extent that Borges points to other evidence that would undermine the ALJ's RFC determination, her contentions misinterpret the narrowly circumscribed nature of this Court's appellate review, which precludes it from re-weighing the evidence or substituting its own judgment for that of the Commissioner.").

The ALJ relied on the medical record when assessing what Plaintiff is still able to do. In assessing Plaintiff's physical impairments, the ALJ limited Plaintiff's RFC to light work based on Plaintiff's CT scan. Thus, the ALJ actually found Plaintiff more limited than the State consultants, who concluded Plaintiff was capable work at the medium exertional level. R. 29. The ALJ also included limitations on climbing. R. 21. The ALJ determined Plaintiff could frequently balance and occasionally stoop, kneel, crouch, and crawl. Id. The ALJ discussed multiple records showing Plaintiff's range of motion, gait, and level of back pain. R. 22–25. The ALJ also discussed x-rays and CT scan records. R. 23–24. The ALJ ultimately determined Plaintiff could perform the functions in the RFC despite his lower back pain and disc generation for which Dr. Martin prescribed Plaintiff a cane. R. 29. Put differently, the ALJ decided the evidence supporting the RFC determination outweighed other contrary evidence, including Plaintiff's cane prescription. The ALJ's conclusion is supported by substantial evidence. Therefore, the Court cannot disturb the ALJ's RFC determination.

Contrary to Plaintiff's assertion, the ALJ did not "play doctor" by evaluating Plaintiff's CT scan records. The ALJ's discussion of Plaintiff's CT scans accurately reflects physicians'

11

findings and interpretations, and the ALJ did not simply analyze raw data. R. 1235–36, 1742–43. Further, the ALJ's decision does not direct Plaintiff to stop using his prescribed cane or otherwise reject his doctor's instructions. The ALJ merely made a finding that the record before her did not support a medical need for Plaintiff's cane. The ALJ's RFC determination is an administrative determination, not a medical directive.

I find no reversible error in the ALJ's rejection of Plaintiff's cane prescription or the exclusion of a cane from Plaintiff's RFC because the ALJ's RFC determination is supported by substantial evidence.

**V.      The ALJ Properly Considered Medical Opinions**

Plaintiff argues the ALJ found a State agency medical opinion persuasive, but failed to account for limitations expressed in the medical opinion. Doc. 17 at 18–20. Plaintiff contends the ALJ should have explained why she excluded a State agency finding that Plaintiff could interact with others "on a simple, superficial level" and "would benefit from a supportive supervisor and reduced social demands." Id. at 19. The Commissioner argues the ALJ properly accounted for State agency opinions. Doc. 20 at 10.

The record contains State agency disability determinations at the initial and reconsideration levels. At the initial level, on November 17, 2019, a State agency examiner found Plaintiff had certain moderate social interaction limitations. R. 188–90. The examiner stated, "Although the claimant can interact appropriately with the public, co-workers, and supervisors on a simple, superficial level, he would benefit from a supportive supervisor and reduced social demands. Abstaining completely and permanently from abusing BENZOS would improve [claimant's] functionality even further in this domain." R. 189. At the reconsideration level, on July 17, 2020, a State agency examiner found Plaintiff had the same moderate social

12

interaction limitations found in the initial determination. R. 225–26. This time, the examiner stated, "The claimant can relate appropriately to peers, coworkers, and supervisors." R. 226.

The ALJ discussed the State agency determinations in her decision. R. 28. The ALJ repeated the above-quoted examiner's notes. Id. The ALJ concluded "the opinion of the [State agency] consultant with regard to claimant's mental abilities is generally persuasive, as the records show [Plaintiff] became stable with medication and his mental status exams showed mostly unremarkable findings." Id. The ALJ ultimately determined Plaintiff had a moderate limitation in interacting with others. R. 19. The ALJ found Plaintiff was able to interact frequently with supervisors, coworkers, and the general public. R. 21.

Essentially, Plaintiff argues ALJ Aranda was required to either include in the RFC the specific limitations in the State agency's initial 2019 report or explain why she did not include the limitations. Plaintiff is incorrect. In making an RFC determination, the ALJ is charged with the duty to weigh evidence, resolve material conflicts in testimony, and determine the case accordingly. See Battle v. Astrue, 243 F. App'x 514, 523 (11th Cir. 2007); Wheeler v. Heckler, 784 F.2d 1073, 1075 (11th Cir. 1986). However, an ALJ need not address every limitation included in a physician's opinion if the written decision is clear the ALJ considered both the physician's opinion and the plaintiff's condition as a whole. Adams v. Comm'r of Soc. Sec. Admin., 586 F. App'x 531, 534 (11th Cir. 2014); Figuera v. Comm'r of Soc. Sec., 819 F. App'x 870, 873 (11th Cir. 2020).

ALJ Aranda plainly considered the initial State agency opinion because she discussed it in detail and found the agency opinion "generally persuasive." The ALJ ultimately decided Plaintiff had a moderate limitation on social interaction, but that Plaintiff is able to interact frequently with supervisors, coworkers, and the general public, which is consistent with the State

agency opinion at the reconsideration level. The ALJ was not required to include or expressly exclude the specific 2019 limitation finding. The ALJ, in her RFC analysis, addressed the social interaction limitations the State agency found at each level. The ALJ also discussed other treatment records related to Plaintiff's mental status. Although the ALJ must consider all medical opinions, including the initial State agency determination, the "final responsibility" for determining Plaintiff's RFC "is reserved to the Commissioner." 20 C.F.R. § 404.1527(d)(2). Accordingly, Plaintiff's contention regarding the State agency determinations does not warrant reversal.

## VI. The ALJ Was Properly Appointed by Acting Commissioner Berryhill

Plaintiff argues ALJ Aranda lacked the authority to hear and decide Plaintiff's claim because ALJ Aranda's appointment was invalid. Doc. 17 at 20–25. Plaintiff argues the ALJ's appointment was invalid because Acting Commissioner Nancy Berryhill—the official who ratified ALJ Aranda's appointment—was not properly appointed under the Federal Vacancies Reform Act of 1998 ("FVRA"). Id. at 25.

Ms. Berryhill served as Acting Commissioner during two different periods. Ms. Berryhill first served as Acting Commissioner for 300 days, from January 21, 2017 to November 16, 2017. Doc. 20 at 12. Ms. Berryhill resumed service as Acting Commissioner on April 17, 2018, when the then-President nominated Andrew Saul to be the Commissioner. Id. Ms. Berryhill ratified the appointments of all SSA ALJs on July 16, 2018, during her second period as acting Commissioner.[4] Plaintiff argues Ms. Berryhill's resumption of service on April 17, 2018, was invalid.

---

[4] Ms. Berryhill presumably ratified ALJ Aranda's appointment on July 16, 2018.

The Commissioner argues Ms. Berryhill was validly serving as Acting Commissioner when she ratified and approved the appointment of Social Security Administration ("SSA") ALJs. Doc. 20 at 11–22. The Commissioner argues that even if Ms. Berryhill was not validly serving as Acting Commissioner when she ratified the appointments of SSA ALJs, Plaintiff still would not be entitled to a new hearing. Id. at 22–25.

The FVRA gives the President limited authority to appoint acting officials to vacant offices without Senate approval. NLRB v. SW Gen., Inc., 580 U.S. 288, 288 (2017). Section 3346 of the Act provides time limitations for acting officials:

> (a)    Except in the case of a vacancy caused by sickness, the person serving as an acting officer as described under section 3345 may serve in the office—
>
> (1)    for no longer than 210 days beginning on the date the vacancy occurs; or
>
> (2)    subject to subsection (b), once a first or second nomination for the office is submitted to the Senate, from the date of such nomination for the period that the nomination is pending in the Senate.

5 U.S.C.A. § 3346(a).

Plaintiff argues § 3346(a)(2) is a tolling provision, not a "spring back" provision, so Ms. Berryhill was not authorized to reassume the authority of Acting Commissioner a second time on April 17, 2018. Doc. 17 at 20–25. Specifically, Plaintiff argues subsection (a)(1) authorizes "the person serving as acting officer" to serve for 210 days, and subsection (a)(2) can extend, or toll, that time if an appropriate nomination has been submitted and is pending. Plaintiff, however, argues Ms. Berryhill could not serve an initial term under (a)(1), discontinue service, then "spring back" to serving as Acting Commissioner once a nomination was submitted. Therefore, Plaintiff argues subsection (a)(2) acts solely as a tolling provision for the time limit in subsection (a)(1).

15

Plaintiff provides extensive briefing about the statutory construction and legislative history of § 3346(a) in support of his position. It is not necessary for this Court to describe or analyze all of Plaintiff's arguments at this point. Identical arguments have been advanced, carefully analyzed, and soundly rejected in three recent appellate opinions. See Dahle v. Kijakazi, 62 F.4th 424, 427 (8th Cir. 2023), cert. denied sub nom. Dahle v. O'Malley, 144 S. Ct. 549 (2024) ("Subsection 2 can act as a tolling provision to subsection 1. But it also provides an independent period of time for an individual to serve as an acting officer." and "Berryhill was properly serving as Acting Commissioner when she ratified the appointment of the SSA ALJs."); Rush v. Kijakazi, 65 F.4th 114, 124 (4th Cir. 2023), cert. denied sub nom. Rush v. O'Malley, No. 23-243, 2024 WL 674707 (U.S. Feb. 20, 2024) ("An acting officer may serve while a nomination is pending in accordance with § 3346(a)(2) regardless of whether her service under § 3346(a)(1) expired before the nomination was submitted. Berryhill therefore was properly serving as SSA Acting Commissioner when she ratified the ALJs' appointments."); Seago v. O'Malley, 91 F.4th 386, 393 (5th Cir. 2024) ("[W]e conclude that § 3346(a)(2) permitted Berryhill to resume her role as Acting SSA Commissioner upon Saul's nomination in April 2018. As such, she was lawfully serving as Acting SSA Commissioner in July 2018 when she ratified the appointment of all SSA ALJs."). No Circuit Court of Appeals has reached a different conclusion.

Additionally, numerous district courts, including district courts within the Eleventh Circuit, have agreed with and embraced the reasoning expressed in these three appellate decisions. See, e.g., Conway v. Acting Comm'r of Soc. Sec., No. 3:22-CV-478-MMH-PDB, 2023 WL 5279583, at *12 (M.D. Fla. July 31, 2023), report and recommendation adopted, No. 3:22-CV-478-MMH-PDB, 2023 WL 5275996 (M.D. Fla. Aug. 16, 2023) (embracing the rationale of Rush and Dahle and reaching the same conclusion); Gorecki v. Soc. Sec. Admin.,

Comm'r, No. 2:22-CV-00822-AMM, 2023 WL 6276704, at *10 (N.D. Ala. Sept. 26, 2023) (same and collecting similar dispositions by district courts within the Eleventh Circuit).

Plaintiff has not offered any argument that has not been soundly rejected by the Circuit Courts of Appeals in Rush, Dahle, and Seago.[5] I reject Plaintiff's arguments about the propriety of Ms. Berryhill's appointment for the same reasons set forth in Rush, Dahle, and Seago. "The logical way to read the phrase 'the person serving' is as a reference to the person qualified to be serving under § 3345, not as a reference to individuals 'presently' serving under § 3346(a)(1)." Dahle, 62 F.4th at 428. The period described in § 3346(a)(2) is not necessarily tied to the period described in (a)(1). Further, the word "or" should be read to give § 3346(a)(2) "independent and ordinary" significance, not read to modify § 3346(a)(1). Rush, 65 F.4th at 119 (quoting Reiter v. Sonotone Corp., 442 U.S. 330, 338–39 (1979)). The word "or" should be read in its inclusive sense, not its exclusive sense, meaning "an acting officer may serve under § 3346(a)(1), § 3346(a)(2), or both." Id. at 120. Congress did not qualify the use of "or" with "either," which tends to show the alternatives are mutually exclusive. Bauer v. Kijakazi, No. 21-CV-2008, 2022 WL 2918917, at *7 (N.D. Iowa July 25, 2022). Therefore, a person serving as acting official may serve a period under § 3346(a)(1), a period under § 3346(a)(2), or both.

Ms. Berryhill lawfully assumed the role of Acting Commissioner under § 3346(a)(2) upon Andrew Saul's nomination and was properly serving when she ratified the appointment of

---

[5] Plaintiff relies on the following district court decisions, which considered almost identical arguments to the ones Plaintiff makes here: Foster v. Comm'r of Soc. Sec. Admin., No. CV-22-00290, 2023 WL 2661608 (D. Ariz. Mar. 28, 2023); Brian T.D. v. Kijakazi, 580 F. Supp. 3d 615 (D. Minn. 2022), rev'd and remanded sub nom. Dahle v. Kijakazi, 62 F.4th 424 (8th Cir. 2023), cert. denied sub nom. Dahle v. O'Malley, No. 23-173, 2024 WL 71921 (U.S. Jan. 8, 2024); Miller v. Comm'r of Soc. Sec., No. 4:21-CV-01007-O-BP, 2023 WL 3814551, at *2 (N.D. Tex. June 5, 2023). Doc. 17 at 22; Doc. 24 at 8. None of these decisions are persuasive. Two of these decisions—Brian T.D. and Miller were either expressly or implicitly overruled by the respective Circuit Courts of Appeals. The reasoning in the third case, Foster, was considered in Seago and was rejected. I do not find the analysis in these three district court decisions persuasive on the issues now before the Court.

ALJ Aranda.  Accordingly, Plaintiff's enumeration of error is without merit, and remand is not required on this basis.

## CONCLUSION

Based on the foregoing, I **AFFIRM** the ALJ's decision.  I also **DIRECT** the Clerk of Court to **CLOSE** this case and enter the appropriate judgment of dismissal.

**SO ORDERED**, this 28th day of March, 2024.

_____
BENJAMIN W. CHEESBRO
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA